UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **OMAR ABU ALI, et al.**<br><br>Petitioners,<br><br>v.<br><br>**ALBERTO R. GONZALES,**[1] **et al.**<br><br>Respondents. | Civil Action No. 04-1258 (JDB) |

### MEMORANDUM OPINION

On July 28, 2004, petitioners sought from this Court a writ of habeas corpus to obtain the release of Ahmed Abu Ali from incarceration in the Kingdom of Saudi Arabia -- which they claimed was acting as a surrogate custodian for the United States government -- and to effectuate his return to this country. They also requested a declaration from this Court that Abu Ali's alleged "detention and interrogation without charge in Saudi Arabia by the U.S. government through their agents" was unlawful and unconstitutional. On December 16, 2004, this Court denied respondents' motion to dismiss the petition for lack of jurisdiction and concluded that, if the facts then before the Court (and uncontested by respondents) were proven true, there would be habeas jurisdiction. See Abu Ali v. Ashcroft, 350 F. Supp. 2d 28, 41 (D.D.C. 2004). Accordingly, the Court authorized limited jurisdictional discovery to determine whether Abu Ali was being held in the constructive custody of the United States.

---

[1] The current Attorney General of the United States has been automatically substituted as a party, pursuant to Fed. R. Civ. P. 25(d)(1).

Because the memorandum opinion that accompanied that order contains a detailed account of petitioners' allegations about the circumstances surrounding Abu Ali's detention in Saudi Arabia, see id. at 31-36, no further rehearsal is required here. In any event, those allegations are of no moment in light of subsequent developments. While jurisdictional discovery was proceeding in this matter, Abu Ali was released from Saudi custody and returned to the United States, where he was indicted by a federal grand jury in the Eastern District of Virginia on charges of, *inter alia*, providing material support to the terrorist group al Qaeda, conspiring to assassinate the President of the United States, and conspiring to commit aircraft piracy. See United States v. Abu Ali, Docket Sheet, No. 05-CR-0053 (E.D. Va.).

Pending now before this Court is a renewed motion to dismiss, filed by respondents following the initiation of the criminal proceedings against Abu Ali, which presents a suggestion of mootness. As mootness creates a jurisdictional defect, respondents' motion will be treated as a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1). For the reasons that follow, the Court agrees with respondents that the case is moot and, therefore, will dismiss the petition for want of jurisdiction.

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 12(b)(1), the plaintiff bears the burden of establishing that the court has jurisdiction. The court, in turn, has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority," see Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001), which includes the obligation to consider the possibility of mootness. See Mine Reclamation Corp. v. FERC, 30 F.3d 1519, 1522 (D.C. Cir. 1994). Although a court must accept as true all the factual allegations contained in the complaint when

reviewing a motion to dismiss pursuant to Rule 12(b)(1), Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993), "'plaintiff[s'] factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." Grand Lodge, 185 F. Supp. 2d at 13-14 (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1990)). Additionally, a court may consider material other than the allegations of the complaint in determining whether it has jurisdiction to hear the case, as long as it still accepts the factual allegations in the complaint as true. See Jerome Stevens Pharmaceuticals, Inc. v. FDA, 402 F.3d 1249, 1253-54 (D.C. Cir. 2005).

## ANALYSIS

A case is considered moot either "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." See Powell v. McCormack, 395 U.S. 486, 496 (1969); see also Clarke v. United States, 915 F.2d 699, 701 (D.C. Cir. 1990) (mootness "requires a federal court to refrain from deciding [a case] if 'events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future'"). Mootness is not merely a reflection of practical considerations, it is a constitutional imperative, derived from the enumerated powers that Article III bestows upon the federal judiciary. By restricting the subject-matter jurisdiction of federal courts to actual "cases" and "controversies," Article III ensures that the judicial branch will not take on "the rarified atmosphere of a debating society," but rather will remain a forum for resolving legal questions "in a concrete factual context." See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 472 (1982). As the Supreme Court

has put it, "mootness, however it may have come about, simply deprives us of our power to act; there is nothing for us to remedy, even if we were disposed to do so.  We are not in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong." Spencer v. Kemna, 523 U.S. 1, 18 (1998).

Although petitioners maintain that this case remains live -- in the sense that they claim Abu Ali's current detention in Virginia is merely an extension of his twenty-month incarceration in Saudi Arabia and that his true custodian throughout the entire period has been the United States government -- such a view ignores a fundamental change in the *nature* of his detention.  Abu Ali is presently in custody pursuant to a criminal indictment, and a federal magistrate judge authorized his pre-trial detention after a hearing.  Moreover, if those facts alone did not extinguish the formerly live controversy, the second aspect of mootness (the lack of a legally cognizable interest in the outcome) presents an insurmountable obstacle to the maintenance of this habeas action.  To have a legally cognizable interest in the outcome of a case, a litigant must have a "personal stake" in the matter.  See U.S. Parole Comm'n v. Geraghty, 445 U.S. 388, 396 (1980).  As the Supreme Court has explained, the "'personal stake' aspect of mootness doctrine ... serves primarily the purpose of assuring that federal courts are presented with disputes they are capable of resolving."  Id. at 397.

In other words, if a court is unable to provide petitioners with a legally consequential remedy for their grievance, they have no stake in the outcome.  This is the situation confronting petitioners here.  Even assuming that this Court could have provided meaningful relief to petitioners at some point in the past, it certainly no longer can.  Not only has Abu Ali essentially obtained the redress that he was seeking -- namely, release from Saudi custody and repatriation to

the United States -- but he also is now in pre-trial custody based on federal criminal charges in another federal district, and thus is beyond the reach of this Court's habeas jurisdiction. See Rumsfeld v. Padilla, 124 S. Ct. 2711, 2722 (2004) ("with respect to habeas petitions 'designed to relieve an individual from oppressive confinement,' the traditional rule has always been that the Great Writ is 'issuable only in the district of confinement'").[2]  Any habeas relief this Court might issue would, therefore, be ineffectual.[3]

Furthermore, none of the recognized exceptions to mootness apply here.  Petitioners, in their opposition to the motion to dismiss, assert that Abu Ali may suffer "collateral consequences" as a result of his detention in Saudi Arabia, thus defeating mootness.  See Carafas v. LaVallee,

---

[2] The fact that Abu Ali was indicted subsequent to the filing of this habeas petition and ordered detained pending trial distinguishes the present situation from that of Ex Parte Endo, 323 U.S. 283 (1944), and the other cases petitioners cite for the proposition that the mere transfer of a prisoner does not automatically strip jurisdiction from a district court that properly had habeas jurisdiction when the petition was filed.  Furthermore, this Court has not determined whether it ever had habeas jurisdiction in this matter -- it simply embarked on a course to enable that determination to be made.

[3] Petitioners suggest that this Court could enjoin the ongoing federal criminal proceedings in the Eastern District of Virginia, but they acknowledge that this "extraordinary request" depends on this Court first determining that it has jurisdiction over Abu Ali's custodians.  (Pet'r Opp'n Br. at 6-8.)  Since the Court finds that it currently has no such jurisdiction, there is no need to engage in speculation over whether such an extraordinary exercise of the Court's injunctive powers is possible, let alone prudent.

That petitioners also request declaratory relief does not alter the mootness determination, because the jurisdictional prerequisite of a "case or controversy" applies with equal force to actions for declaratory relief.  See Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 240 (1937) (Declaratory Judgment Act "is operative only in respect to controversies which are such in the constitutional sense").  Even if there were no jurisdictional obstacle, a declaratory judgment about the lawfulness of Abu Ali's prior detention in Saudi Arabia would be inappropriate, given that "[t]he very purpose of the declaratory judgment procedure is to prevent the accrual of ... avoidable damages."  See American Mach. & Metals v. De Bothezat Impeller Co., 166 F. 2d 535, 536 (2d Cir. 1948).  In this case, the damages Abu Ali may have suffered as a consequence of being detained in Saudi Arabia can no longer be mitigated.

391 U.S. 234, 237-38 (1968) (recognizing the "collateral consequences" exception). They argue that one such collateral consequence is that the district court in the Eastern District of Virginia might conclude that the evidence against Abu Ali in his criminal trial was obtained as the result of torture or that Abu Ali was denied his speedy trial rights, and thus dismiss the criminal indictment against him and order his release. (Pet'r Opp'n Br. at 6.) The implication is that, in so doing, Abu Ali would be injured by losing the opportunity to have a judicial inquiry into the legality of his detention in Saudi Arabia. In reality, though, such a consequence would result from the ongoing criminal proceeding, not from his prior detention in Saudi Arabia. But, no matter how broadly one defines "collateral," the loss of jurisdiction that accompanies the cessation of a federal criminal prosecution simply is not the kind of consequence that Carafas or the other precedents in this area contemplate, and, in any event, it is far too speculative. See Spencer, 523 U.S. at 12 (declining to presume collateral consequences would flow from petitioner's allegedly wrongful reincarceration on a parole violation). Nor does this case fall within either of the mootness exceptions that permit equitable review of allegedly unlawful actions which, while no longer ongoing, could readily reoccur, because there is no reasonable expectation that Abu Ali might in the future be subjected to detention without charge by a foreign sovereign at the behest of the United States. See DeFunis v. Odegaard, 416 U.S. 312, 318-19 (1974) (discussing mootness exceptions where there has been "voluntary cessation of allegedly illegal conduct" or where the actions are "capable of repetition, yet evading review").

    As a final matter, it must be noted that, in deciding that Abu Ali's habeas petition is moot, this Court does not pass judgment on the availability of other forms of legal redress for the injuries that he alleges he suffered during the course of his detention in Saudi Arabia. Nothing in

this opinion forecloses Abu Ali from pursuing whatever civil remedies may be available to him under the law for past wrongs; nor does the Court express any view on whether such remedies are available. More immediately, he is, of course, free to avail himself of the various procedural safeguards afforded by the adversarial criminal process. Those matters are left for another day or another court. It suffices to say that, at this point in time, the petition for habeas relief and a declaratory judgment is moot.

## CONCLUSION

Upon consideration of the foregoing and the entire record herein, the Court will grant respondents' motions to dismiss. A separate order has been issued on this date.

                                                          /s/ John D. Bates  
                                                        JOHN D. BATES  
                                            United States District Judge

Dated:   September 19, 2005

Copies to:

Jonathan Louis Stern
ARNOLD & PORTER, LLP
555 12th Street, NW
Washington, DC 20004-1206
Email: jonathan_stern@aporter.com

Morton Sklar
WORLD ORGANIZATION AGAINST TORTURE, USA
1725 K Street, NW, Suite 610
Washington, DC 20006
Email: msklar@humanrightsusa.org

David Douglas Cole
GEORGETOWN UNIVERSITY LAW CENTER
600 New Jersey Avenue, NW
Washington, DC 20001

Jenny-Brooke Condon
WORLD ORGANIZATION FOR HUMAN RIGHTS USA
1725 K Street, NW
Washington, DC 20006

Susan G. Lee
ARNOLD & PORTER, LLP
555 12th Street, NW
Washington, DC 20004
Email: susan_lee@aporter.com

Jonathan S. Martel
ARNOLD & PORTER, LLP
555 12th Street, NW
Washington, DC 20004-1206

Mara Vanessa Jessica Senn
ARNOLD & PORTER, LLP
555 12th Street, NW
Washington, DC 20004-1206
Email: mara_senn@aporter.com

> *Counsel for petitioners*

Ori Lev
Judry L. Subar
UNITED STATES DEPARTMENT OF JUSTICE, CIVIL DIVISION
Federal Programs Branch, Room 7138
P.O. Box 833
Washington, D.C. 20044

    *Counsel for respondents*